614 F.2d 581
 5 Media L. Rep. 2325
 Paul William LITTLEFIELD, Appellant,
v.
FORT DODGE MESSENGER, a newspaper published daily by
Messenger Printing Company, a division of The
Ogden Newspapers, Inc., a corporation,
and Mike Glover, Appellees.
 No. 79-1215.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 8, 1979.
Decided Jan. 2, 1980.
Certiorari Denied March 24, 1980.
See 100 S.Ct. 1342.
 
 Paul William Littlefield, pro se.
 Herbert R. Bennett, Bennett, Beisser & Wilke, Fort Dodge, Iowa, for appellees.
 Before LAY, HEANEY and HENLEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Paul Littlefield appeals from the dismissal of his libel complaint by the court below.[1] We affirm.
 
 
 2
 On August 6, 1973, in the Fayetteville Circuit Court for the State of Kentucky, Littlefield, a lawyer, pled guilty to the misdemeanor of attempting to commit a felony. He was placed on three years probation which was conditioned in part on his forsaking the practice of law for the duration of the probation.
 
 
 3
 A little over a year later, the Committee on Professional Ethics and Conduct of the Iowa State Bar Association reported to the Iowa Supreme Court that Littlefield was practicing law in Iowa in violation of his Kentucky probation. On December 16, 1974, notice was issued by that court advising Littlefield as follows: "(S)atisfactory evidence has been received by this Court of your conviction of a crime. Said evidence being you were on or about August 6, 1973 convicted upon your plea of guilty to a charge of attempting to commit a felony (.)" The notice further informed him of a hearing concerning his temporary suspension from the practice of law.
 
 
 4
 In reporting on this chain of events, the Fort Dodge Messenger ran a front-page article entitled "Set hearing on license suspension." The eleventh paragraph of that article misquoted the above cited notice (which it called an order) as follows: "The order, filed by the court Monday states that 'satisfactory evidence has been received of your (Littlefield's) pleading guilty of a felony (.)' " (Emphasis added.) The italicized portion should have read "of a crime." It is this misquotation that Littlefield characterizes as libelous.[2]
 
 
 5
 The law of libel involves the accommodation of federal constitutional interests in free speech and a robust press with state interests in protecting the reputations of its citizens from defamatory falsehoods. In recent years, the Supreme Court has on several occasions described the contours of that accommodation. See Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). As a result, distinctions between "public officials" or "public figures" and "private individuals" have assumed critical importance. Public officials or figures can recover damages caused by defamatory falsehoods from media defendants only if they can demonstrate actual malice i. e., that the publication was made "with knowledge of (the statement's) falsity or with reckless disregard for the truth." Gertz v. Welch, supra, 418 U.S. at 342, 94 S.Ct. at 3008. States may permit private individuals to recover damages from media defendants in accordance with a less stringent standard of culpability, so long as state law does "not impose liability without fault." Id. at 347, 94 S.Ct. 2997.
 
 
 6
 While the line between public figures and private persons is not always clear, the Supreme Court's decisions in Gertz and Firestone offer guidance. In Gertz, an attorney representing the family of a youth killed by a Chicago police officer complained of an allegedly defamatory article published about him in American Opinion, "a monthly outlet for the views of the John Birch Society." Gertz v. Welch, supra at 325, 94 S.Ct. at 3000. In determining what level of constitutional protection should be afforded this article, the Supreme Court rejected the position advanced by a plurality in Rosenbloom v. Metromedia, supra, that the inquiry should focus on whether the article involved a topic of "public or general interest." Gertz v. Welch, supra, 418 U.S. at 346, 94 S.Ct. 2997. Rather, in recognition of the state interest in "the compensation of individuals for the harm inflicted on them by defamatory falsehood," id. at 341, 94 S.Ct. at 3008, the Court focused on "the status of the person defamed." Id. at 333, 94 S.Ct. at 3004. It drew a line between public figures and private individuals, noting that public figures have greater ability to contradict falsehoods through self-help, id. at 344, 94 S.Ct. 2997, and that public figures are assumed to have "voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them." Id. at 345, 94 S.Ct. at 3010.
 
 
 7
 In Firestone, Mary Alice Firestone alleged that she had been defamed by a Time magazine squib reporting on the Florida court proceedings in which she was divorced from her husband, Russell Firestone, "the scion of one of America's wealthier industrial families." Time, Inc. v. Firestone, supra, 424 U.S. at 450, 96 S.Ct. at 963. The Court rejected two arguments proffered in support of the actual malice standard. First, it held that Ms. Firestone was not a public figure because she "did not assume any role of especial prominence in the affairs of society, other than perhaps Palm Beach Society, and she did not thrust herself to the forefront of any particular public controversy in order to influence the resolution of the issues involved in it." Id. at 453, 96 S.Ct. at 965. Her "voluntary" resort to court and even the press conferences she held during the divorce proceedings were not attempts to influence the resolution of any public controversy. Id. at n. 3, 96 S.Ct. 958. Second, the Court rejected the argument that coverage of judicial proceedings is, per se, sufficient to warrant invocation of the actual malice standard. In reaffirming Gertz's rejection of the "public or general interest" standard, it emphasized that the focus remains on the status of the person defamed rather than the issue under discussion. It noted that
 
 
 8
 while participants in some litigation may be legitimate "public figures," either generally or for the limited purpose of that litigation, the majority will more likely resemble respondent, drawn into a public forum largely against their will in order to attempt to obtain the only redress available to them or to defend themselves against actions brought by the State or by others.
 
 
 9
 Id. at 457, 96 S.Ct. at 966-67.
 
 
 10
 We turn now to the case before us. The district court, in dismissing Littlefield's complaint, concluded that he was a public figure for the limited issue of his bar discipline proceedings. In so holding, the court found a voluntariness in Littlefield's actions that was absent in Gertz and Firestone.
 
 
 11
 (Littlefield) is unlike Gertz and Firestone in that he was drawn into a public forum and debate as a result of his purposeful act of practicing law in Iowa in direct contravention of his probation.
 
 
 12
 Littlefield v. Fort Dodge Messenger et al., 481 F.Supp. 919, 922 (D.N.D.Iowa 1978). The district court also noted that the substantial public interest in bar disciplinary proceedings was an additional factor that may be relevant,[3] in finding Littlefield to be a public figure. Id. at 922. The court applied the public figure standard, and concluded that actual malice had not been proven. Id. at 920. Finally, it noted that "even if (Littlefield) were found to be a private person, his utter failure to prove actual injury or damages of any kind would bar recovery." Id. at 923 (footnote and citation deleted).
 
 
 13
 Our analysis differs in part from that of the district court since we cannot agree that Littlefield is a public figure. We fail to see anything in Littlefield's status indicating that he has ready access to effective means of self-help or that he has voluntarily assumed the risks of public exposure by thrusting himself into a public controversy with a view toward influencing its resolution. While it is true that he "voluntarily" practiced law in violation of his probation, there is no indication that he did so out of a desire to influence any public controversy. Rather, his voluntary action is akin to that of Ms. Firestone's in her petitioning a court for separate maintenance from her husband. Although the issue in which Littlefield became involved was of great public interest, he like the "majority" of litigants, was "drawn into a public forum largely against (his) will in order * * * to defend (himself) against actions brought by the State." Time, Inc. v. Firestone, supra, 424 U.S. at 457, 96 S.Ct. at 967. Furthermore, the public's interest should not be considered in making the public figure/private individual determination. After Gertz and Firestone, the status of the person allegedly defamed is the controlling factor.
 
 
 14
 Although we find Littlefield to be a private individual for the purposes of this libel action, we agree with the district court that he has failed to prove damages.[4] Gertz held that "States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." Gertz v. Welch, supra, 418 U.S. at 349, 94 S.Ct. at 3011. Only actual damages may be compensated on a showing of lesser fault. Though actual damages could include "impairment of reputation * * *, personal humiliation, and mental anguish and suffering," id. at 350, 94 S.Ct. at 3012, Littlefield's only evidence of damage concerned his dismissal from employment. This evidence was inadequate since it consisted solely of Littlefield's testimony that he was dismissed from his employment with the federal government in Brentwood, Missouri, after his supervisor made a trip to Fort Dodge, Iowa, where he learned of Littlefield's disbarment. Littlefield failed to prove either (1) that his supervisor ever believed him to be a felon, or (2) that such belief, rather than knowledge of his disbarment, was the motivating factor in his termination. Moreover, Littlefield failed to prove any link between the article of which he complains, published in 1974, and his supervisor's 1976 discovery of his disbarment. Thus, Littlefield failed to prove any actual damage resulting from the article.
 
 
 15
 Littlefield raises two ancillary contentions. The first is that the district court erred in not granting his request for a jury trial. Littlefield never made a written demand for a jury trial as required by Rule 38(b), Fed.R.Civ.P. This failure constitutes a waiver of a trial by jury. Rule 38(d), Fed.R.Civ.P. He now contends that the district court abused its discretion in failing to grant a jury trial when a belated request was made for one at the pretrial conference. See Rule 39(b), Fed.R.Civ.P. While we agree that courts "ought to approach each application under Rule 39(b) with an open mind," 9 C. Wright & A. Miller, Federal Practice and Procedure § 2334, at 116 (1971), and that jury trials ought to be liberally granted when no prejudice results, we do not find the denial here to be an abuse of the district court's discretion. Littlefield offers no justification for the failure to make an appropriate demand other than inexperience, and he points to no prejudice resulting from denial. Furthermore, the record shows that Littlefield engaged in a pattern of conduct apparently intended to delay trial. Granting his request for a trial by jury at the pretrial conference stage would have further delayed final disposition of the matter. In these circumstances, denial of the request was within the bounds of the discretion of the trial court.
 
 
 16
 Second, Littlefield contends that the district court erred in failing to decide whether Littlefield's right to privacy had been invaded. He contends that his disciplinary proceedings were confidential under Iowa Sup.Ct.R. 118.7 and, therefore, that the Fort Dodge Messenger invaded his privacy by publishing its article relating to those proceedings. It is clear, however, that the rule on which Littlefield relies governs only the actions of the Iowa bar. It does not purport to govern the actions of the press. If so, it would constitute a constitutionally suspect prior restraint on publication.
 
 
 17
 For the reasons set forth in this opinion, the order of the district court is affirmed.
 
 
 
 [1]
 United States District Court for the Northern District of Iowa, Central Division
 
 
 [2]
 Littlefield also alleges that he was libeled in the concluding paragraph of a subsequent article entitled "Former F. D. Man disbarred," printed in the Fort Dodge Messenger on August 30, 1976. That paragraph reads as follows: "Littlefield no longer lives in Fort Dodge and his present whereabouts are not known, though he was reportedly living in New Orleans at one time." Littlefield contends that this was written in an "FBI wanted poster style and contain(s) false and misleading information." The record discloses that the paper made several attempts to determine Littlefield's current address but was unable to do so. Thus, although Littlefield's whereabouts may have been known to some, we cannot say that the statement was false. Certainly it was not libelous
 
 
 [3]
 The court specifically avoided making the nature of the issue under discussion, i. e., disciplinary proceedings, a determinative factor in reaching the conclusion that Littlefield was a public figure; it considered Littlefield's voluntary conduct alone to be sufficient to support its holding. Littlefield v. Fort Dodge Messenger et al., 481 F.Supp. 919, 922 (D.N.D.Iowa 1978)
 
 
 [4]
 While we do not reach the issue of fault, we note that the standard required of private plaintiffs under Iowa libel law is not clear. Gertz v. Welch, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), requires that state libel law not impose liability without fault. Thus, states must require defamation plaintiffs to prove at least negligence in the publication of defamatory falsehoods; they may require more. See Troman v. Wood, 62 Ill.2d 184, 340 N.E.2d 292 (Ill.1975). The Supreme Court of Iowa expressly reserved its judgment on the standard applicable to private plaintiffs in McCarney v. Des Moines Register & Tribune Co., 239 N.W.2d 152, 158 (Iowa 1976). Even assuming that Iowa would adopt the negligence standard, it appears that Littlefield failed to make even that showing. The record indicates that the defendant reporter, who checked his story, in general terms, with a variety of sources including Littlefield, exercised due care in writing the piece