**M & M CONTRACTING, INC.,**
**Plaintiff and Appellee,**
v.
**MIDWESTERN HOMES, INC.,**
**Defendant and Appellant.**

**No. 13933.**

Supreme Court of South Dakota.

Argued March 21, 1983.

Decided May 18, 1983.

Rehearing Denied June 24, 1983.

Gary G. Colbath of Banks & Johnson, P.C., Rapid City, for plaintiff and appellee.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

FOSHEIM, Chief Justice.

Defendant Midwestern Homes, Inc. is the owner of Northdale Subdivision in Black Hawk, South Dakota. Defendant took bids on Phase 2 of its development of the subdivision and accepted Plaintiff M & M Contracting, Inc.'s bid for site preparation and utility installation. Plaintiff's bid, as signed by defendant, became the contract of the parties. It is dated April 10, 1979, and reads, in its entirety, as follows:

| | |
|---|---|
| Stripping of top soil and stock piling | $ .35 yard |
| Grading of site | .65 yard |

Any rock and water for compaction on a time and material basis Fuel Clause based on $ .54 per gallon

$4.00 per lin. ft. sewer and water includes installation of fire hydrants and valves, setting manholes, all material furnished by Midwestern Homes.

All yardage to be computed by Francis, Meador & Gellhaus, Inc.

Compaction—88% on house location
90% on utility line
93% on streets

Checked by Francis, Meador & Gellhaus

We Propose hereby to furnish material and labor—complete in accordance with above specifications, for the sum of *To be determined* dollars ($_____). Payment to be made as follows: *Upon estimate.*

After plaintiff began work on the contract it submitted regular pay estimates as the work progressed. These pay estimates were cumulative and adjustments were made on each estimate for amounts previously paid. On April 9, 1980, plaintiff submitted Pay Estimate 8 for $229,560.49 less $196,184.59 paid on Pay Estimates 1–7. The amount due on Estimate 8 ($33,375.90)

plus the balance due from Estimate 7 ($22,-536.00) equaled $55,911.90. Defendant refused to pay this amount; plaintiff quit working on the project and filed mechanics liens on all lots in the subdivision. Plaintiff then brought this suit to foreclose the liens. Defendant counterclaimed, alleging that plaintiff had improperly installed the water system and that the project was not finished. The counterclaim asked that plaintiff be ordered to pay the cost of completion. After trial to the court, defendant's counterclaim was denied and findings, conclusions of law and judgment were entered in favor of plaintiff for the full amount due on Estimate 8, plus prejudgment interest. Defendant appeals. We affirm in part, reverse in part and remand.

It is obvious that the contract of the parties, quoted above, is not a model of clarity or completeness. Thus, much testimony was given by both sides in an attempt to explain the terms of the contract to the trial court. The trial court stated in one finding that the contract was for time and materials and in another that it was a cost-plus contract, and concluded that it was a hybrid. The trial court also found, and it appears undisputed, that plaintiff was to furnish labor and machinery, defendant the materials, and the engineering firm of Francis-Meador-Gellhaus, Inc. was to compute yardage and check compaction.

Defendant maintained at trial that it refused to pay plaintiff because many of its charges were "unreasonable," i.e., plaintiff charged for work not done or spent too much time doing the work that was done. On appeal defendant takes issue with five charges allowed by the trial court on Estimate 8, arguing we should reduce the amount allowed or remand for further findings.

■ Before discussing these charges, we must address defendant's contention that some of the disputed awards are "without any supporting finding." Estimate 8 itemizes 27 different charges. At trial, defendant went through Estimate 8 line by line, telling the trial court which charges it considered reasonable and which unreasonable.

Among the items defendant identified as unreasonable are the charges disputed on appeal. In Finding 15 the trial court found "that the charges made by the Plaintiff were representative and comparable to charges made by others in the industry and in similar trades and were not overcharges." Under the circumstances of this case, Finding 15 is an adequate "supporting finding" on each charge allowed.

■ The first issue relates to the charge of $46,700.00 on Estimate 8 for putting in 11,675 feet of utility line at $4.00 per linear foot. Defendant argues that this award is wrong as a matter of law. Defendant concedes plaintiff dug the trenches and laid 11,675 feet of utility pipe but states that much of the line has not been compacted to 90% and therefore plaintiff has not earned the entire $4.00 per foot. Plaintiff's president, Fred Morris, testified that the $4.00 per foot charge for utilities included digging the trench, laying the pipe on an appropriate bed and then compacting material on top of it. Plaintiff's field supervisor, Mitch Morris, testified that certain stretches of utility line were not compacted from one to two feet above the pipe to surface grade. In fact, the parties agree that 90% compaction was not achieved along the entire 11,675 feet of utility trench. The dispute is whether 7,650 feet are not at 90% compaction, as defendant claims, or whether the figure is closer to 5,000 feet, as plaintiff contends. Plaintiff sued for work performed under the contract. Plaintiff argues it should get $4.00 per foot, even though it includes 90% compaction, because in digging the utility trenches it incurred extra costs under the rock clause which it absorbed. We believe that plaintiff's voluntarily absorption of legitimate extra charges, without billing defendant for them under the rock clause, does not justify payment for compaction not done. However, we are unable to determine from the record what percentage of the $4.00 per foot figure represents the cost of compaction. We therefore remand to the trial court with directions to make this determination, to find the trench footage

not compacted 90%, and to reduce the $46,700.00 allowance accordingly.

Defendant next urges that the trial court was "clearly in error" in allowing the full amount charged in Estimate 8 for moving top soil piles, for water truck rental, and for additional fuel costs. We understand defendant's position to be that Finding 15, *supra* (that plaintiff's charges were representative and comparable and not overcharges), is clearly erroneous concerning these three items. Our standard of review is whether we are left with a definite and firm conviction that the trial court's finding on these charges is mistaken. *In Re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970); SDCL 15–6–52(a).

On the issue of the $3,000 charge for moving top soil piles, defendant emphasizes that during trial it twice asked plaintiff to break down the $3,000 figure, by machine used and hours used, and that plaintiff did not do this. The trial court did not ask for this breakdown. Plaintiff testified, through Fred Morris, that it knew which machines were used and for approximately how many hours and that it could reconstruct the $3,000 figure from time cards which were in evidence and which it had furnished defendant before trial. Plaintiff also testified, without contradiction, that the $3,000 figure first appeared on Pay Estimate 2 and that defendant had approved and paid Estimate 2 a number of months before the dispute arose over Estimate 8. Defendant testified, through its president, Mr. Buckingham, that although it did not know the size of the top soil piles or where they had to be moved, $1,500.00 was a reasonable charge for moving them. Based on this evidence, and its opportunity to judge the credibility of the witnesses, the trial court made Finding 15. We cannot say it was clearly erroneous.

We reach the same conclusion on the charge for additional fuel. We believe this charge is adequately documented. We have considered defendant's assertion that if plaintiff had finished the project in six months, as originally contemplated, the fuel charge would be lower. The contract is silent on a completion date and the trial court obviously believed plaintiff's testimony that defendant never set a firm completion date.

Defendant's objection to the water truck rental charge is that it was only obligated to pay rental when water was used for compaction and that it should not pay for the time plaintiff used the water truck for dust control. Defendant testified that the environmental standards of dirt moving require dust control and that if plaintiff had not controlled the dust, he might have been shut down by "the authorities." Under the contract—which we repeat leaves much unsaid—defendant was to provide the material to get the project done and in order to get it done plaintiff apparently had to control dust. We therefore find no error in the trial court's allowance of the total amount charged for water truck rental.

Defendant next argues that $79,942.00 in charges under the rock clause is "supported only by the general" Finding 15. We have concluded above that this finding is adequate. We have also reviewed the evidence on the rock clause charges and do not believe Finding 15 is clearly erroneous in this regard.

Finally, defendant contends that the trial court erred in denying its counterclaim for money to complete the project.[1] According to the contract, plaintiff did not agree to complete the project. And defendant testified, through its superintendent, Mr. Denman, that it could terminate the contract with plaintiff at any time and that it finally did so. Since plaintiff never charged defendant for the cost of completing the project, but only for work completed, the trial court correctly denied defendant's counterclaim. As the trial court stated in Conclusion of Law 3: "The contract was a cost-plus, time-and-material contract

---

1. On appeal defendant has dropped his claim that plaintiff improperly installed the water system.

and the Court finds that the work would have had to be done to complete the project and additional pay would have been necessary." Defendant argues, however, that it should receive some set-off because when plaintiff left the job site it filled the trenches with the wrong kind of fill material. Defendant states that it will necessarily bear the expense of removing this material before it can complete the utility work. We believe the trial court correctly refused to allow a set-off. Trial on this case began about a year after plaintiff left the job site. During the interim no work was done on the project. Defendant does not suggest that plaintiff should have left the trenches open. In the absence of any contract provision covering this eventuality or any personal direction from defendant on the matter, we believe plaintiff acted properly. There was a risk someone could have been injured by falling in an open trench. The uncovered pipes could have been damaged. It also appears plaintiff would have incurred expense in cutting and bringing the proper fill material to the trenches. (There is considerable dispute in the testimony whether such material was even available.) In light of defendant's refusal to pay Estimate 8, plaintiff was justified in not completing the work as planned.

We affirm in part, reverse in part and remand.

All the Justices concur.