CENTROL, INC., of South Dakota,
Plaintiff and Appellee,

v.

Kevin MORROW, Keith Parker, Lynn
Maass, Agronomics, Inc., Crop Pro,
Inc., Crop Patrol, Inc., Agritech, Inc.,
Pro AG, Inc., John Doe and XYZ Company, Defendants and Appellants.

No. 17417.

Supreme Court of South Dakota.

Argued Dec. 2, 1991.

Decided Aug. 5, 1992.

Rehearing Denied Sept. 10, 1992.

Edward F. Fox, St. Paul, Minn., Thomas F. Burns, Watertown, co-counsel for plaintiff and appellee.

William E. Coester, Milbank, for defendants and appellants.

SABERS, Justice.

Defendants challenge the non-competition and non-disclosure provisions of their employment contracts and damages awarded for breach of same.

## FACTS

Centrol, Inc. of South Dakota (Centrol) is a South Dakota cooperative consisting of member cooperatives. It provides customized soil and crop consulting services to farmers through employees known as "crop consultants." These crop consultants develop a wide variety of valuable and confidential information. To protect this information and customer good will, Centrol required its crop consultants to execute employment agreements with non-competition and non-disclosure provisions restricting competition with Centrol in Centrol's Area of Primary Responsibility (APR) for a period of one year.

Prior to September 6, 1989, Kevin Morrow, Lynn Maass and Keith Parker (Defendants) were employed by Centrol as crop

consultants. Defendants simultaneously resigned from Centrol on September 6, 1989. For a period of approximately five months prior to that date, they regularly disparaged Centrol to their customers and informed them of their intent to form competing companies. Before resigning from Centrol, they solicited Centrol's customers for their own advantage. Defendants also used Centrol's confidential and proprietary business records, customer lists, revenue reports, financial statements and patron survey forms to obtain bank financing to start and run their competing businesses. They continued to use this information in the operation of their businesses after resigning. Prior to resigning, Defendants consulted with Bill Platz, a former Centrol employee who had evaded Centrol's non-competition agreement and court injunction by use of third party proxies. This consultation with Platz was to obtain the same legal counsel in hopes of using a similar evasion strategy. As part of this strategy, Defendants each formed separate corporations after September 6, 1989.

Defendants were three of only seven crop consultants employed by Centrol. They agreed to simultaneously resign without notice to Centrol and, in fact, affirmatively misled Centrol as to their intention to stay. Their departure from Centrol came at a critical time—when consulting contracts were about to be renewed for the following crop year. This reduced Centrol's consultant staff by nearly one half. Immediately following their resignations, Defendants obtained consulting contracts with the majority of their prior customers.

On September 28, 1989, Centrol sued them claiming breach of non-disclosure and non-competition agreements, misappropriation of trade secrets, breach of fiduciary duties, conversion, and for punitive damages. On the same date, Centrol also filed a motion seeking a temporary injunction to restrain Defendants from directly or indirectly competing with it, from using Centrol's confidential business information/trade secrets and from contacting any

former Centrol customers obtained through breach of the agreements.

On October 13, 1989, the trial court granted Centrol's motion and enjoined Defendants from continuing any competition. Upon issuance of this order, Defendants transferred all of their stock in the competing businesses to either the corporations or to their spouses. This resulted in the spouses being the sole shareholders, officers and directors of these corporations. These women had no knowledge or experience in the crop consulting business and were employed full time in jobs unrelated to these corporations. Following these transfers, the Defendants, through their spouses and the corporations, continued to service customers in violation of the preliminary injunction. In supplemental proceedings, on October 30, 1989, the court found these stock transfers and related activities to be transparent attempts to evade the preliminary injunction. The court found Defendants in contempt of its first injunction, ordered them to obey the mandates of the preliminary injunction and warned them that any further such activity would result in sanctions.

Despite the Preliminary Injunction of October 13 and the Supplemental Order for Preliminary Injunction of October 30, Defendants continued to provide soil testing, crop consulting and other related services. They attempted to conceal this misconduct by providing false and incomplete responses to discovery requests by Centrol.

The case was tried to the court and a judgment was entered in favor of Centrol. The court awarded Centrol compensatory damages of $201,073.76; punitive damages of $91,848.18; attorneys fees of $156,054.88 and permanent injunctive relief.[1]

Defendants claim the court erred in:

(1) concluding that the non-competition and non-disclosure agreements were valid,

---

1. The court enjoined Defendants from competing with Centrol in the APR until September 6, 1991 and from releasing or using Centrol's con-
fidential business information/trade secrets; and ordered Defendants to immediately return such records to Centrol.

(2) awarding compensatory and punitive damages for misappropriation of trade secrets,

(3) determining the amount of

(a) compensatory damages,

(b) punitive damages, and

(c) attorney fees,

(4) holding them jointly and severally liable,

(5) issuing the preliminary injunction, supplemental preliminary injunction and permanent injunction, and

(6) denying their pretrial motion for a jury trial.

## 1. VALIDITY OF NON–COMPETITION AND NON–DISCLOSURE AGREEMENTS.

■ Defendants claim the court erred in concluding that the non-competition and non-disclosure agreements were supported by consideration and valid under SDCL 53–9–11. Conclusions of law are reviewed de novo to determine if there is a mistake of law and "are given no deference by this court on appeal." *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113, 117 (S.D.1987).

■ The enforceability of non-competition agreements is governed by SDCL 53–9–11, which provides:

An employee may agree with an employer at the time of employment *or at any time during his employment* not to engage directly or indirectly in the same business or profession as that of his employer for any period not exceeding two years from the date of termination of the agreement and not to solicit existing customers of the employer within a specified county, city *or other specified area* for any period not exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein.

(emphasis added). These non-competition agreements were executed after Defen-

dants began working for Centrol, were limited to a period of one year following termination and to the APR. Defendants do not challenge the time restriction, but claim that the agreements fail for lack of consideration and that the APR does not meet the "specified area" requirement of SDCL 53–9–11 as it is incapable of determination from the agreements.

In *American Rim & Brake, Inc. v. Zoellner*, 382 N.W.2d 421 (S.D.1986), this court upheld a *non-competition* agreement. The agreement in *American* met the time and area restrictions of SDCL 53–9–11. In *American*, the employees argued that the court must also find the non-competition agreement reasonable before it could be enforced. We rejected that argument stating:

SDCL 53–9–11 allows employers and employees to make exactly the kind of agreement entered into between American and defendants, without a further showing of reasonableness.

*Id.* at 424. The Defendants argue that the APR is undefined and undefinable and outside the statutory language of SDCL 53–9–11 and the *American* exception to reasonableness. The trial court found that the APR was not only defined and known to Defendants, but that Defendants themselves participated in the preparation of maps used to define it.

As noted above, the non-competition agreements were executed after Defendants began working for Centrol. These agreements were updated versions of similar agreements between Defendants and Centrol, Inc. of Webster.[2] In *American*, we held that the signing of new non-competition agreements while already employed did not fail for lack of consideration in light of SDCL 53–8–7.[3] *Id.* at 424.

■ Defendants make no specific argument nor cite any authority contesting the validity of the non-disclosure portion of the agreements. "[A]n issue or argument not

---

**2.** Centrol, Inc. of Webster merged with Centrol, Inc. of Brookings to form Centrol, Inc. of S.D. in early 1987 and these agreements were signed by Defendants with Centrol, Inc. of S.D.

**3.** SDCL 53–8–7 provides in part:
A contract in writing may be altered by a contract in writing without a new consideration[.]

briefed and supported by authority is considered abandoned." *Drier v. Great American Ins. Co.*, 409 N.W.2d 357, 361 (S.D.1987); *see also Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976). Since the duration, area and consideration are valid under SDCL 53–8–7 and 53–9–11, the court's conclusion that the non-competition and non-disclosure agreements were valid was not error.

## 2. AWARD OF DAMAGES.

Defendants claim the court erred in concluding that they misappropriated Centrol's trade secrets in violation of the Uniform Trade Secrets Act (Act), SDCL 37–29–1 to 37–29–11, and in awarding damages for such violation. As stated above, conclusions of law are reviewed de novo. *Permann*, 411 N.W.2d at 117. However, the court's findings of fact must support the conclusions of law. *Knodel v. Bd. of Cty. Com'rs., etc.*, 269 N.W.2d 386, 390 (S.D.1978); *Kirkeby v. Renaas*, 85 S.D. 515, 519, 186 N.W.2d 513, 516 (1971).

SDCL 37–29–1(4) provides:

'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Defendants claim Centrol's customer lists, revenue reports, financial statements, patron survey forms, soil test results and crop consulting data do not rise to the level of trade secrets due to Centrol's release of soil test results and crop monitoring reports to its member cooperatives. However, defendants admit that such information was confidential and proprietary and their use of such information to obtain bank financing for their competing businesses was a breach of their non-disclosure contracts with Centrol. In *1st American Systems, Inc. v. Rezatto*, 311 N.W.2d 51 (S.D. 1981), a case decided prior to adoption of the Act, this court stated:

Even if the contract protects information which is technically not a trade secret, it clearly reveals the intent of the parties to create a confidential relationship. A breach of this relationship is actionable even if Rezatto could glean some of the information from public sources.... We hold that the expiration and renewal dates, personal customer data and customer names and addresses within appellant's files taken together and construed in light of the contract's express creation of confidentiality comprise a trade secret even though separately each item may not rise to that level.

*Id.* at 58–59. *See generally, Mid–America Mktg. v. Dakota Industries*, 281 N.W.2d 419 (S.D.1979), *rev'd on reh'g* 289 N.W.2d 797 (S.D.1980). Although *Rezatto* is not precedent under the Act, it is consistent with the Act.

In this case, the court found that Defendants not only signed the non-competition/non-disclosure agreements, they also certified that they had "read and fully [understood]" Centrol's Policy Manual, which provides in part:

Two Basic Rules:

1. Don't use confidential information for your personal gain.
2. Don't pass along such information to someone else who has no work-related need to know.

Therefore, there was an express confidential relationship between Defendants and Centrol. The court also found that the confidential and trade secret information derived independent value from not being readily known or ascertainable, and that Centrol employed reasonable measures to protect this information through use of the Policy Manual and the non-competition/non-disclosure agreements.

Under the Act, any *general* dissemination of "confidential" information would negate a finding that such information constituted a trade secret. However, the only dissemination by Centrol of the confidential

and proprietary information was to its member cooperatives. Therefore, under *Rezatto*, no general dissemination occurred here and the information constituted a trade secret. Thus, the court's findings of fact support its conclusions of law that Defendants misappropriated Central's trade secrets in violation of the Act. Under the Act, damages could be awarded to Central. SDCL 37–29–3.

### 3. THE AMOUNT OF DAMAGES.

(a) Compensatory Damages.

■ Defendants claim the court erred in determining the amount of compensatory damages. Defendants mistakenly assume that SDCL 21–2–1 controls the determination of damages in this case;[4] however, SDCL 37–29–3 provides for damages for misappropriation of trade secrets:

(a) ... Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

The court did not limit the award of compensatory damages to the misappropriation of trade secrets. It found and included breach of fiduciary duty, unfair competition and related misconduct in the award. Therefore, although 37–29–3 controls as to damages for misappropriation of trade secrets, SDCL 21–3–1 is available for the remaining torts.[5]

■ The court found that Central's customer retention rate was high, and, but for Defendants' misconduct, these customers would have remained with Central. The court also found that:

[D]espite Central's reasonable efforts to retrieve its clientele, the record is clear that in 1989–1990 Central suffered substantial lost revenues and profits. (See, for example, Plaintiff's Exhibits 103 and 104).

Therefore, the court multiplied each defendant's 1989 retention rate against their respective 1989 gross revenues to determine damages. Under this method, the court measured compensatory damages at $201,073.76 for one year as follows:

| Name | 1989 Retention Rate | 1989 Revenue | Compensatory Damages |
|------|------|------|------|
| Morrow | 88.7 | $86,758.45 | $ 76,954.75 |
| Maass | 80.0 | $81,592.30 | $ 65,273.84 |
| Parker | 73.9 | $79,628.11 | $ 58,845.17 |
| | | | $201,073.76 |

We do not accept this method of computation. Gross revenues fail to account for expenses. However, evidence appears to show that Central suffered a loss exceeding $95,000 in the year following Defendants' actions.[6] The court found that it would take Central "at least the next two

---

**4.** SDCL 21–2–1 provides:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

**5.** SDCL 21–3–1 provides: For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

**6.** Exhibits 103 and 104, as referred to above by the trial court, document Central's losses during 1989–1990.

years, if not longer" to recover. Given these findings, substantial damages appear to be supported in the record under SDCL 37–29–3(a). Although the court erred in measuring one year's damages and in reaching its award of $201,073.76, there appears to be proof of a reasonable basis from which substantial damages can be inferred. *Walling Chemical Co. v. Bigner*, 349 N.W.2d 647, 651–52 (S.D.1984). Since the measurement of damages is for the trial court, we reverse and remand for redetermination of damages from the record, or on rehearing, in the trial court's discretion. *M & M Contracting v. Midwestern Homes, Inc.*, 334 N.W.2d 223, 225–26 (S.D.1983); SDCL 15–30–14.

(b) Punitive Damages.

 The Defendants claim the court erred in awarding exemplary or punitive damages to Centrol. As noted above, the trial court did not limit the damage award to misappropriation of trade secrets, but included breach of fiduciary duty, unfair competition and related misconduct. Therefore, the provisions of SDCL 21–3–2 [7] and 37–29–3(b) [8] apply. Generally, exemplary or punitive damages are not recoverable for breach of contract. SDCL 21–3–2. However, in *Hoffman v. Louis Dreyfus Corp.*, 435 N.W.2d 211 (S.D.1989) we stated:

Conduct which merely is a breach of contract is not a tort, but the contract may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to tort liability.

*Id.* at 214 *quoting Kunkel v. United Security Ins. Co.*, 84 S.D. 116, 135, 168 N.W.2d 723, 733 (1969). Although this contract established such a relationship through its non-disclosure/non-competition agreements and the policy manual, SDCL 37–29–3(b) is dispositive.

The court found Centrol established by clear and convincing evidence that Defendants' actions were willful and malicious in the misappropriation of its confidential information and trade secrets. After determining relative culpability, the court concluded that Centrol was entitled to recover punitive damages of one-eighth of $58,845.17 or $7,335.65 from Parker/Crop Pro; one-quarter of $76,954.75 or $19,238.69 from Morrow/Agronomics; and 100% of $65,273.84 from Maass/Crop Patrol. These amounts and the total amount of $91,848.18 were within the limits imposed by SDCL 37–29–3(b). However, punitive damages bear a relationship to compensatory damages, which we reversed and remanded in part 3(a). Therefore, these amounts must be reconsidered in light of the factors bearing upon punitive damages. *Flockhart v. Wyant*, 467 N.W.2d 473, 479 (S.D.1991) (*citing Groseth Int'l Inc. v. Tenneco, Inc.*, 440 N.W.2d 276, 278 (S.D.1989); *Wangen v. Knudson*, 428 N.W.2d 242, 246 (S.D.1988)). This reconsideration should be done from the record.

(c) Attorney Fees of $156,054.88.

The trial court awarded Centrol attorney fees under SDCL 37–29–4(iii), SDCL 15–6–37(c) and because of Defendants' violation of the Supplemental Preliminary Injunction.[9] SDCL 37–29–4(iii) provides a sufficient basis for the award of attorney fees in this case since it allows "reasonable attorney's fees to the prevailing party" when "willful and malicious misappropriation ex-

---

7. SDCL 21–3–2 provides:

In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

8. SDCL 37–29–3(b) provides:

If willful and malicious misappropriation exists, the court may award exemplary damages in an amount *not exceeding twice* any award made under subsection (a).
(emphasis added).

9. SDCL 15–6–37(c) allows for attorney fees resulting from an opposing party's failure to admit the truth of any matter pursuant to a request for admissions under SDCL 15–6–36. The supplemental preliminary injunction allowed for sanctions, including attorney fees, for violations of the injunction.

ists." Although Defendants claim the award of attorney fees was error due to a lack of "willful and malicious misappropriation," we have already ruled in parts 3(a) and (b) that such misappropriation existed.

■ Defendants objected to Centrol's attorney fees in the trial court. The trial court sustained some of these objections, but found the majority of Centrol's attorney fees reasonable.[10] Centrol claims the award was adequately supported by Affidavits and time and billing records. On appeal, defendants' briefs and specific claims of error relate only to the three bases of liability used by the trial court to impose attorney fees. As noted above, we have already decided this issue adversely to the defendants. On appeal, defendants do not claim error as to any specific items or amounts and any such claim is waived on appeal. *See*, SDCL 15–26A–60(6); *Nielsen v. McCabe*, 442 N.W.2d 477, 480 (S.D.1989). We affirm this award for attorney fees.

## 4. JOINT AND SEVERAL LIABILITY.

■ The Defendants claim the court erred in concluding that the Defendants were jointly and severally liable for compensatory damages and attorneys fees. The court made findings and conclusions that the Defendants conspired to accomplish their unfair competition with Centrol. Under SDCL 15–8–11:

"[J]oint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Although the court measured damages individually, Centrol received one judgment against all of the Defendants for the same injury to its business. Therefore, the court's conclusion and order making the Defendants jointly and severally liable for the entire award of compensatory damages and attorneys fees is not error. SDCL 15–8–11.

## 5. PRELIMINARY AND PERMANENT INJUNCTIONS.

■ The Defendants claim the court erred in issuing the preliminary, supplemental preliminary and permanent injunctions. However, Defendants mistakenly base this claim on SDCL 21–8–2(5) which provides in part:

An injunction cannot be granted:

. . . .

(5) To prevent the breach of a contract, the performance of which would not be specifically enforced.

Under SDCL 21–9–2(1), obligations "to render personal service" will not be specifically enforced. The agreements in this case are not obligations *to render* personal service but obligations *restricting* competition, permitted under SDCL 53–9–11, *after* termination of personal service. Additionally, injunctive relief is expressly authorized under SDCL 37–29–2(a) when actual or threatened misappropriation occurs and may be continued for "an additional reasonable period of time in order to *eliminate* commercial advantage[.]" Therefore, Defendants' argument is without merit and the court's issuance of the injunctions was not error.

## 6. DENIAL OF JURY TRIAL.

■ The Defendants' final claim is that the court erred in denying them a jury trial. SDCL 15–6–38(b) provides:

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and *not later than ten days after the service of the last pleading* directed to such issue. Such demand may be endorsed upon a pleading of the party.

(emphasis added). Defendants served the last pleading, an Answer to First Amended Complaint and Counterclaim, on April 4, 1990. No request for jury trial was made

---

**10.** Defendants did not request a hearing on attorney fees and have not raised the lack of a hearing as error. Failure to properly place a matter before the trial court constitutes a waiv-

er of such ground as a basis for reversal on appeal. *Matter of Estate of Kuhn*, 470 N.W.2d 248, 253 (S.D.1991).

in this answer or in any prior pleading. Under SDCL 15–6–38(b), Defendants could have served a demand for jury trial until April 14, 1990. Assuming Centrol served a response to Defendants' counterclaim on the last day allowed, Defendants could have served a demand for jury trial as late as May 14, 1990. Defendants made no demand for a jury trial until August 10, 1990. SDCL 15–6–38(d) provides in part:

> The failure of a party to serve a demand as required by § 15–6–38 constitutes a waiver by him of trial by jury.

Therefore, Defendants' failure to timely serve a demand for a jury trial within the time limits imposed by SDCL 15–6–38(b) "constitutes a waiver." *See, Spear v. Dayton's,* 771 F.2d 1140, 1144 (8th Cir.1985); *Littlefield v. Fort Dodge Messenger,* 614 F.2d 581, 585 (8th Cir.1980), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

There has been no showing from Defendants to justify their delay. After losing on the preliminary injunctions and several other motions, Defendants obtained new counsel. He made a demand for jury trial, apparently as trial strategy. Such a move is analogous to losing pre-trial motions before a particular judge and then deciding that a new judge would be preferable. SDCL 15–12–24 prohibits such an attempt:

> The submission to a judge or magistrate of argument or proof in support of a motion or application, or upon trial, is a waiver of the right thereafter to file an affidavit for change of such judge or magistrate by any party or his counsel who submitted the same [.]

Therefore, the court's denial of Defendants' untimely demand for jury trial was not an abuse of discretion. ·

We affirm except for parts 3(a) and (b), which we reverse and remand for redetermination of damages consistent with this opinion.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and HENDERSON, JJ., concur in part and dissent in part.

WUEST, Justice (concurring in part and dissenting in part).

The majority opinion wrongly disposes of the damages issue. The award of damages should be reversed in toto with directions only to redetermine damages. The authority cited by the majority does not support its decision requiring the trial court to redetermine damages based on the current state of the record. In *M & M Contracting,* cited by the majority, we held we were unable to make a determination of what damages should be from the record and remanded to the trial court with directions to make the determination. We did not direct that the redetermination be made from the record. *Id.,* 334 N.W.2d at 225–26. In most instances, we have simply remanded to the trial court to redetermine damages. *See, e.g., Rusch v. Kauker,* 479 N.W.2d 496, 501 (S.D.1991); *White Man v. Gunnick,* 473 N.W.2d 148, 151 (S.D.1991); *Nielsen v. McCabe,* 442 N.W.2d 477, 482 (S.D.1989); *Minor v. Sully Buttes School Dist.,* 345 N.W.2d 48 (S.D.1984); *M & M Contracting,* 334 N.W.2d at 225–26. For all the reasons given hereafter, that is the course I would follow here.

As explained in the majority opinion, the trial court found Centrol lost revenues and profits. Yet, he based compensatory damages on gross revenues failing to account for expenses. That was error. In order to ascertain lost profits, he should have deducted expenses. *Groseth Int'l., Inc. v. Tenneco Inc.,* 440 N.W.2d 276, 278 (S.D. 1989). *See also Regan v. Moyle Petro. Co.,* 344 N.W.2d 695, 697 (S.D.1984); *Big Band, Inc. v. Williams,* 87 S.D. 24, 202 N.W.2d 121 (1972). Since punitive damages bear a relationship to compensatory damages, the award for punitive damages must also be reversed. SDCL 37–29–3(b). *See also Flockhart v. Wyant,* 467 N.W.2d 473, 479 (S.D.1991); *Groseth Int'l.,* 440 N.W.2d at 278.

I would also reverse the award of $156,054.88 in attorney fees. SDCL 37–29–4(iii) permits a prevailing party to recover *"reasonable* attorney's fees" when "willful and malicious misappropriation exists." (Emphasis added). Absent a stipulation, rea-

sonableness of attorney's fees should be established on testimony produced at trial or hearing as distinguished from using affidavits.[1] At first blush, the fees appear exorbitant and unreasonable. A hearing would provide the proper vehicle to determine whether or not they are reasonable.[2]

In its discussion of the jury trial issue, the majority cites SDCL 15–12–24 claiming it has some bearing on the issue. In my opinion it is not relevant. SDCL 15–6–38(d) cited in the majority opinion is the controlling statute.

I concur with the remainder of the majority opinion.

HENDERSON, Justice (dissenting under Theory I; concurring in part and dissenting in part on Theory II).

## THEORY I

This case was tried to the court. It should have been tried to a jury. Appellants were entitled to a jury trial under Article VI, section 6 of the Constitution of the State of South Dakota which provides: "The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy." *See also, Nizielski v. Tvinnereim*, 453 N.W.2d 831 (S.D.1990). In reviewing this case, it appears that certain pretrial motions were made to the trial court, to include trial by jury. On August 29, 1989, appellants' motion for jury trial was denied. In this case, appellee amended its complaint which contained 13 counts, and 11 of these counts prayed for monetary damages. *If* this action began in Equity, it turned into an At Law lawsuit. "... [w]hen the action is at law, *either party has a right to a jury trial.*" (Emphasis supplied mine). *Id.* at 832–33 (citations omitted). When the trial court denied the motion for trial by jury, it indicated that this action was primarily an action sound-

ing for injunctive or equitable relief, and, thus, a jury trial was not warranted. Not so. Trial court awarded compensatory damages, punitive damages, and attorney's fees. A judgment was entered against appellants in excess of $400,000 and it included injunctive relief. Trial court should have granted a jury trial under these circumstances. I will concede that the Answer and Answer and Counterclaim did not request a jury trial. However, there was the August 10, 1990, motion which should be controlling. Said motion was denied by the trial court on September 7, 1990. The trial date was October 30, 1990. Another salient fact is that appellants were represented by other counsel when an Answer and Counterclaim were interposed. When attorney Coester took over this case, he moved the court for a trial by jury under the provisions of SDCL 15–6–39(b). A metamorphosis has evolved in the decisional law in this state. *See, First W. Bank, Sturgis v. Livestock Yards*, 466 N.W.2d 853 (S.D.1991). Acting Justice Hertz, writing for this Court, reflected if a counterclaim seeks legal relief, the party raising a legal claim is entitled to a jury trial as a matter of right. "In examining the development of this rule, however we note that the United State's Supreme Court has abolished the requirement that a legal claim must not be incidental." (Citations omitted). *First W. Bank*, at 856. Certainly, when the *primary* action contains 13 counts, 11 of which are legal in nature, asking for damages, the legal relief requested mandates a jury trial. The majority opinion violates the State Constitution on jury trial and vaults technicality over substance and fairness. If, indeed, this conceptualization is correct, we, on this Court, should reverse this case in its entirety and permit appellants a jury trial. A gigantic error of law attends in refusing appellants a jury trial. "Error juris nocet.

---

1. We allow attorney fees in divorce cases on appeal supported by affidavit. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 865–66 (S.D.1985). But, this is not a divorce proceeding. As an appellate court, we prefer to review the records of the trial court and do not take evidence except by reference. *Estate of Schuldt*, 428

N.W.2d 251, 255 (S.D.1988); *Estate of Hansen*, 366 N.W.2d 852, 855–56 (S.D.1985).

2. Contrary to the majority's assertion, the defendants propounded twelve specific objections to the plaintiff's Application for Attorney Fees. The issue was therefore preserved for appeal.

Error of law injures. A mistake of law has an injurious effect; that is, the party committing it must suffer the consequences." Black's Law Dictionary, 5th Edition, page 487. Here, appellee. Appellee should not lament a retrial for it wrongfully took away appellants' right to a jury trial. Therefore, I would not reach the other issues.

## THEORY II

If Theory I is posited incorrectly, I concur on that aspect of the majority opinion which affirms liability against the defendants, as their conduct and actions reflect a sustained pattern of misconduct. However, I am absolutely convinced that the affixation of damages and attorney's fees are unsupported due to, simply, an error by the trial court in determining damages based upon the theory of gross revenues. This creates a trickle down outfall requiring a reversal on compensatory damages, punitive damages, and attorney's fees.

On pages 1239 and 1240 of the Settled Record, there is a document signed by attorney William E. Coester on behalf of defendants wherein 12 specific objections were set forth to attorney's fees for the plaintiff. These objections are specific in nature pointing out to the trial court the reasons why, item for item, attorney's fees would not be proper. One of these items was in the amount of $32,564.35. For the majority opinion to express that defendants waived an award for attorney's fees is incorrect. Furthermore, attorney Coester further preserved the issue of an award of attorney's fees by briefing this issue in his initial brief and reply brief.