**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3967

_____

In re: Yukon Energy Corporation,                                    *
                                                                    *
          Debtor.                                                   *
                                                                    *
_____                                     *
                                                                    *
Yukon Energy Corporation,                                           *
                                                                    *
          Appellee,                                                 *
                                                                    * Appeal   from   the   United
States                                                              
     v.                                                             * District Court for the
                                                                    * District of Minnesota.
Brandon Investments, Inc.,                                          *
                                                                    *
          Appellant,                                                *
                                                                    *
Charles Clayton,                                                    *
                                                                    *
          Defendant,                                                *
                                                                    *
Kent Knudson,                                                       *
                                                                    *
          Appellant,                                                *
                                                                    *
John Doe; Jane Roe,                                                 *
                                                                    *
          Defendants.                                               *

_____

          Submitted:  December 8, 1997
                              Filed:   March 17,
1998

_____

Before McMILLIAN, MAGILL, and MURPHY, Circuit Judges.
_____

MAGILL, Circuit Judge.

Brandon Investments, Inc. (Brandon) and its president, Kent Knudson, appeal the district court's[1] adoption of the bankruptcy court's[2] decision that held Knudson liable for fraudulently reviving an extinguished lien against the bankruptcy estate of Yukon Energy Corporation (Yukon) but absolved Brandon from respondeat superior liability. In an earlier order that was not appealed to this Court, the bankruptcy court had determined that the lien was without value. Because Brandon's interests were not adversely affected by the district court's ruling presently before us, we dismiss Brandon's appeal. Appealing pro se, Knudson claims that the bankruptcy court erred when it exercised jurisdiction over the fraud claim, denied his request for a jury trial, and excluded Knudson from a proceeding because of Knudson's repeated disruptions in court. Knudson also claims that the district court erred in adopting the bankruptcy court's report and recommendation. We affirm.

**I.**

Yukon engaged in the wholesale heating and air conditioning business. In 1991, Yukon entered into a contract with L.A.W. Machining and Manufacturing, Inc. (LAW), in which LAW agreed to manufacture a large number of furnaces for Yukon. The sale price was calculated by

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

[2]The Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

a certain formula, subject to an agreed-upon maximum amount.  Almost immediately LAW began charging Yukon in excess of the maximum price.  Yukon responded by paying LAW only in part and withholding the remainder.

Determined to continue their relationship despite their price disagreement, in February 1992 Yukon granted LAW a security interest on Yukon's inventory and equipment "to secure payment to LAW . . . of all indebtedness of Yukon to LAW for completed furnaces delivered to Yukon and invoiced to Yukon." Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.), Case No. 4-93-7221, Adv. No. 4-94-33, slip op. at 3 (Bankr. Minn. Mar. 15, 1995) (quotations and emphasis omitted) (Yukon I).

In September 1992, LAW's creditors initiated involuntary bankruptcy proceedings against LAW. The amount of Yukon's indebtedness to LAW remained in dispute; the trustee alleged that the debt was $250,000, while Yukon claimed it owed no more than $33,000. Also in the fall of 1992, Knudson, an investor in Yukon, helped instigate a power struggle for control of Yukon. Using proxy statements that a state court later found deceptive, Knudson was elected to Yukon's board of directors. With Yukon under the control of Knudson and his associates, Yukon and LAW agreed to settle Yukon's debt to LAW for $56,657.07 in return for a release and discharge of the security interest held by LAW. Both Knudson and Charles Clayton, Yukon's attorney at the time, were involved in the negotiations leading to the settlement.

By February 1993, Yukon was facing tough financial times of its own. Unable to pay for the LAW settlement from its own funds but desiring to clear the lien on its assets, Yukon (through Knudson) solicited funds from Yukon shareholders and outside investors. In return for their loans, the investors were told they would receive a new secured position. However, hoping to lure new creditors with lien-free assets, Knudson did not secure

the position of the new investors.  Yukon used the new funds to pay off the LAW lien, which was released by the bankruptcy court on February 11, 1993.  <u>See</u> <u>Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.)</u>, Case No. 4-93-7221, Adv. No. 4-94-33, slip op. at 7-8 (Bankr. Minn. Sept. 19, 1995) (<u>Yukon II</u>).

In March 1993, a Minnesota state court invalidated the shareholders election which had placed Knudson on Yukon's board of directors, partly because of false and

misleading information in the proxies concerning Knudson's professional background.[3] The state court also invalidated all actions taken by the illegally-constituted board, subject to ratification by the court. Undeterred in his effort to control Yukon's fate,[4] Knudson devised a plan to revive the extinguished lien by treating the lien's release as an assignment to a dummy corporation controlled by Knudson. This would enable the dummy corporation to hold the priority lien on Yukon's assets. Knudson enlisted Clayton's help in activating a corporate shell entitled Brandon Investments, Inc., with Knudson as president and sole director. Knudson and Clayton then issued shares of Brandon stock to the investors in proportion to their original investments used to finance the LAW settlement. The Brandon shares were backdated to the date on which the investors had advanced the funds, a date prior to the creation of the Brandon corporate entity.

Acting in concert with Knudson, Clayton--still attorney of record for Yukon--petitioned the bankruptcy court for an amendment to the February 11, 1993 approval of the settlement of the LAW lien. Knudson and Clayton, purportedly acting on Yukon's behalf, requested that the order be modified to state that the lien had been assigned to Brandon. Clayton did not inform Yukon's new directors of the pending change, and as a result Yukon

---

[3]According to the bankruptcy court, "[t]he proxy statement represented that Knudson was a 'securities investment broker'; in fact, he has never been such and rather has been employed by at least 16 different employers since 1969." Yukon II, slip op. at 6.

[4]The bankruptcy court found that Knudson's actions were "fueled solely by personal animosity and self-serving motivations aimed at destroying [rival directors in Yukon], and perhaps Yukon, in the process." Yukon II, slip op. at 16.

failed to object to the motion.  On May 11, 1993, the bankruptcy court entered an order as requested.

On December 30, 1993, Yukon filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  On February 15, 1994, Yukon commenced an adversarial

proceeding against Knudson, Clayton, and Brandon, alleging under several different theories of recovery that Brandon's revived lien was valueless and that Knudson and Clayton had fraudulently revived the extinguished lien.[5] The proceedings were converted to Chapter 7 proceedings on May 12, 1994. In August 1994, Alpha American Company (Alpha) paid $29,500 for virtually all of Yukon's assets, on condition that Alpha bear the expenses of the adversarial proceeding against Brandon. Alpha and Yukon agreed to split the proceeds of any recovery. Because the purported lien "diminished the price at which Yukon's trustee could sell the assets of the bankruptcy estate," Yukon II, slip op. at 20, $1500 of the purchase price was specifically allocated for machinery, equipment, and inventory, the fair market value of which totaled in excess of $275,000.

The bankruptcy judge severed the claim pertaining to the valuation of the lien from the fraud claim and tried the lien valuation issue first.[6] On March 15, 1995, the bankruptcy court entered an order in favor of Yukon declaring that the lien against Yukon's estate was without value. See Yukon I, slip op. at 11. Taking core jurisdiction over the claim as a proceeding to determine

---

[5]Yukon also alleged that Clayton had committed malpractice and breached his fiduciary duty to Yukon. In finding for Yukon, the bankruptcy court determined that, "[i]n seeking the amended order, Clayton was acting in the interests of and at the direction of Knudson, not Yukon, whose best interests were unquestionably divergent from that of Yukon." Yukon II, slip op. at 16. These claims have been subsequently settled, and Clayton does not present an appeal for our consideration.

[6]We note that the resolution of the fraud claim was not dependent on a ruling on the lien issue, because the fraudulent conduct pertained to whether the lien continued to exist, while the lien issue involved a calculation of the value of the goods that LAW had sold to Yukon.

"the validity, extent, or priority of liens" under 28 U.S.C. § 157(b)(2)(K), the bankruptcy court calculated that Yukon owed less to LAW than the amount by which LAW had overcharged Yukon under the contract. Yukon thus owed nothing to LAW and the LAW lien had no value.

Knudson and Brandon moved the district court for "leave to appeal from the final and interlocutory Order of the bankruptcy court dated March 15, 1995." Defs.' Second Combined Mot. for Leave to Appeal Final and Interlocutory Order (Apr. 24, 1995) at 1, reprinted in Brandon's App. at Tab 18. The district court denied this motion, noting that "[i]f the Defendants seek to appeal from the Bankruptcy Court's final Order in this case, they may file an appeal pursuant to [Bankruptcy] Rule 8001 and this District's local rules. The present Motion is not the proper vehicle for initiating such an appeal." Brandon Invs. v. Yukon Energy Corp. (In re Yukon Energy Corp.), Civ. No. 3-95-580, slip op. at 3 (D. Minn. Dec. 5, 1995). Neither Knudson nor Brandon appealed the bankruptcy court's ruling on the lien issue as a final order.

The bankruptcy court then heard the remaining claim of fraud against Knudson and Brandon, taking jurisdiction over the claim as a noncore proceeding under 28 U.S.C. § 157(c)(1). In regard to Knudson's efforts to revive the extinguished lien, the bankruptcy court held that Knudson committed fraud under Minnesota law, finding that he "purposefully omitted to tell Yukon a material fact and intentionally misrepresented this information with the intention of preventing Yukon from opposing the motion to amend and the concomitant assignment to Brandon." Yukon II, slip op. at 16-17. However, because Knudson was not acting within the scope of his employment at Brandon but rather acted with the intent of serving his own interests, the bankruptcy court held that Brandon was not liable for fraud under the doctrine of respondeat superior. Id., slip op. at 27. The district court, after conducting a de novo review of the record, adopted the bankruptcy judge's report and recommendation. Yukon

-10-

Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.), Civ. No. 3-95-993, slip op. at 3 (D. Minn. Sept. 19, 1996).

Presently before this Court are appeals by Brandon and Knudson of the district court's adoption of the bankruptcy court's report and recommendation disposing of the fraud claim. On appeal, however, Brandon contends that the bankruptcy court lacked jurisdiction over the lien valuation claim as well as the fraud claim and that Brandon

was entitled to a jury trial.  Appealing pro se, Knudson incorporates the same issues plus a due process claim arising from his ejection from the proceedings because of his unruly conduct and a claim that the district court improperly conducted a de novo review of the bankruptcy record.

## II.

We first address whether the bankruptcy court's ruling that the LAW lien had no value was a final order sufficient to trigger this Court's jurisdiction.  Courts of appeals have jurisdiction over appeals "from all final decisions, judgments, orders, and decrees" in bankruptcy proceedings.  28 U.S.C. § 158(d).  Unlike district courts, which may in their discretion hear appeals from interlocutory bankruptcy court orders, the jurisdiction of this Court is limited to final orders.  See In re Woods Farmers Coop. Elevator Co., 983 F.2d 125, 127 (8th Cir. 1993).  Even if jurisdiction is not properly raised by the parties, "this court is obligated to address jurisdictional problems on its own if it perceives any." In re Bank Bldg. & Equip. Corp., 23 F.3d 1390, 1392 (8th Cir. 1994).

"[F]inality for bankruptcy purposes is a complex subject and courts deciding appealability questions must take into account the peculiar needs of the bankruptcy process."  In re Koch, 109 F.3d 1285, 1287 (8th Cir. 1997) (quotations and alterations omitted).  To determine the finality of an order in a bankruptcy proceeding, we consider "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) a later reversal on that issue would require recommencement of

-12-

the entire proceeding."  In re Apex Oil Co., 884 F.2d 343, 347 (8th Cir. 1989).  This is a more liberal standard of finality than is generally applied to nonbankruptcy proceedings.  See Currell v. Taylor, 963 F.2d 166, 167 (8th Cir. 1992) (per curiam).

We conclude that the bankruptcy court's valuation of the lien was a final order.  Once the lien was held to be worthless, no further action was needed to determine Brandon's status as a creditor of Yukon.  See Woods, 983 F.2d at 127 ("[A]n order entered before the conclusion of a complex bankruptcy proceeding is not appealable under § 158(d) unless it finally resolves a discrete segment of that proceeding." (emphasis added)).  Because all other liens against Yukon had been satisfied by funds raised from the investors, see Yukon II, slip op. at 10, the rights of all the creditors with regard to the estate were "on the verge of being completed . . . [and] a delay in review . . . would serve no purpose."  First Nat'l Bank v. Allen, 118 F.3d 1289, 1294 (8th Cir. 1997).  Furthermore, lien valuation orders have typically been considered final. See, e.g., In re Morse Elec. Co., 805 F.2d 262, 264 (7th Cir. 1986) ("A disposition of a creditor's claim in a bankruptcy is 'final' for purposes of § 158(d) when the claim has been accepted and valued, even though the court has not yet established how much of the claim can be paid given other, unresolved claims."); In re Saco Local Dev. Corp., 711 F.2d 441, 448 (1st Cir. 1983) ("[A]s long as an order allowing a claim or priority effectively settles the amount due the creditor, the order is 'final' even if the claim or priority may be reduced by other claims or priorities.").  Accordingly, we hold that the lien valuation was a final order.

By failing to timely appeal the lien order as a final order, Brandon has waived any objection to the determination that the lien was valueless.  In this appeal, we therefore review only the district court's approval of the bankruptcy court's resolution of the fraud claim--which held Brandon not liable under

-14-

respondeat superior.  Because the fraud order did not cause injury to Brandon, Brandon's appeal will not be heard by this Court.  <u>Cf.</u> <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, 335 (1980) ("A party may not appeal from a judgment or decree in his favor . . . ." (quotations omitted)); <u>Spencer v. Casavilla</u>, 44 F.3d 74, 78 (2d Cir. 1994) ("Ordinarily, a party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, <u>i.e.</u>, that he is 'aggrieved' by the order.").  Accordingly, Brandon's appeal is dismissed, and the remainder of this appeal

concerns only the district court's approval of the bankruptcy court's recommendation on the fraud claim.

### III.

Knudson's appeal of the adverse determination on the fraud claim raises several issues. Knudson argues that the bankruptcy court lacked jurisdiction to hear the fraud claim, erred in denying his request for a jury trial, and denied Knudson due process by ejecting Knudson from the proceedings for his unruly conduct. Knudson also argues that the district court erred in conducting its de novo review. We hold that the bankruptcy court properly exercised jurisdiction over the fraud claim as a noncore proceeding and that Knudson waived any right to a jury trial by failing to make a timely demand. We also find no error in the ejection of Knudson or in the district court's review of the bankruptcy court's report and recommendation.

Knudson first contends that the bankruptcy court lacked subject matter jurisdiction over this proceeding. The Bankruptcy Code authorizes bankruptcy courts to hear and determine core proceedings, which include "determinations of the validity, extent, or priority of liens" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(K), (O). For proceedings that are not core proceedings but are "otherwise related to" a bankruptcy case, the bankruptcy court submits proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1). In its analysis of its jurisdiction

-16-

over the fraud claim in the present case, the bankruptcy court noted "indices of both core and/or non-core proceedings," and "in an abundance of caution" issued a report and recommendation for the district court's consideration. <u>Yukon II</u>, slip op. at 22.

We therefore must address whether the fraud claim was properly within the bankruptcy court's noncore jurisdiction. For a bankruptcy court to exercise noncore jurisdiction, "the proceeding at issue must have some effect on the administration of the debtor's estate." Abramowitz v. Palmer, 999 F.2d 1274, 1277 (8th Cir. 1993) (quotations omitted). As we have stated:

> The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts upon the handling and administration of the bankrupt estate.

In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir. 1987) (quotations and alterations omitted). Designed to streamline the disposition of a debtor's entire bankruptcy estate, see Abramowitz, 999 F.2d at 1278, the statutory grant of noncore jurisdiction should be read to "promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." In re Lemco Gypsum, Inc., 910 F.2d 784, 787 (11th Cir. 1990).

We conclude that the bankruptcy court properly exercised noncore jurisdiction over the fraud claim in this case because the resolution of that claim impacted the administration of Yukon's bankruptcy estate. Although Alpha purchased Yukon's assets subject to the lien, Yukon retained a one-half interest in any recovery for fraud against Knudson or Brandon. See Order Approving Sale at ¶ 2 (Bankr. Minn. Aug. 23, 1994),

-18-

reprinted in Brandon's App. at Tab 4.  Furthermore, the underlying misconduct clearly affected Yukon, as the bankruptcy court determined that the fraudulent revival of the lien "impaired Yukon's ability to reorganize" and "necessarily diminished the price at which Yukon's trustee could sell the assets of the bankruptcy estate." Yukon II, slip op. at 19, 20.  The presence of the fraudulently revived lien reduced to $29,500 the amount received for the sale of over $250,000 of Yukon's assets. While we have

held that "even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test," In re Titan Energy, Inc., 837 F.2d 325, 330 (8th Cir. 1988), Yukon's continuing stake in the outcome of the fraud claim combined with the lien's effect on the asset sale price rendered the fraud's effect far more direct. Accordingly, the bankruptcy court properly exercised noncore jurisdiction over the fraud claim.

Knudson next argues that he was improperly denied the right to a trial by jury. Yukon originally filed its adversarial complaint against Knudson on February 14, 1994. Knudson demanded a jury trial on January 31, 1995. Yukon amended its complaint several times during this period, including an amended complaint dated January 31, 1995. The bankruptcy court denied the motion for a jury trial, noting that the "[d]efendants have fought a war of attrition for one year" and that "[t]his is simply another tactic employed to delay this trial." Yukon I, slip op. at 10.

We do not decide whether Knudson was in fact entitled to a jury trial, because any right has long since been waived. Under the local bankruptcy court rules, the failure of a party to demand a jury trial on a given issue within ten days of service of the last pleading on that issue constitutes a waiver of the right to a jury trial. U.S. Bankr. Ct. Minn. Local R. 203(a), (e). Even if Knudson requested a jury trial within ten days of Yukon's final amended complaint, the essence of Yukon's allegation against Knudson was not changed by this amendment and remained unchanged throughout the course of the litigation. See Williams v. Farmers and Merchants Ins. Co., 457 F.2d 37, 38 (8th Cir. 1972) ("Once waived,

the right [to a jury trial] is revived by amendments to the pleadings only if new issues are raised in such amendments and in such event the right is revived only as to the new issues." (citations omitted)). Because the amended complaints did not raise new issues concerning Knudson, his failure to timely demand a jury trial following the filing of the initial complaint resulted in a waiver of this right.

The remainder of Knudson's claims can be addressed briefly. Knudson argues that the bankruptcy court violated due process by ejecting him from the courtroom after Knudson had asked a witness a question concerning Santa Claus and the Easter Bunny and despite the court's repeated urging throughout the entire proceeding that Knudson behave with civility. The bankruptcy court has authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, see 11 U.S.C. § 105(a), which includes the power to maintain decorum within the courtroom. We find no abuse of discretion in the bankruptcy court's action. Cf. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." (quotations omitted)).

Knudson also claims that the district court--which explicitly stated that it had reviewed the record de novo--failed to apply the proper standard of review of the bankruptcy court's decision. Knudson argues that the district court improperly adopted the bankruptcy court's recommendation in its entirety because the district court noted that neither the bankruptcy court's findings of fact nor its conclusions of law were "contrary to law." Knudson's hypertechnical reading of the district court's word choice fails to demonstrate that the district court's review was not de novo. See In re Dillon Constr. Co., 922 F.2d 495, 497 (8th Cir. 1991) (burden of proof rests on party claiming district court failed to review bankruptcy court's report and recommendation de novo). Accordingly, this claim is without merit.

Finally, Knudson claims that the adverse determination on the fraud claim was not adequately supported by the evidence.  To the contrary, we find the evidence of Knudson's fraudulent conduct overwhelming.  See Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986) (stating prima facie case for fraud under Minnesota law).  Accordingly, we affirm on this claim as well.

## IV.

Because the only final judgment adverse to Brandon's interests was not properly appealed, we dismiss Brandon's appeal.  Finding jurisdiction proper and no error in denying Knudson's request for a jury trial, we affirm the district court's approval of the bankruptcy court's decision holding Knudson liable for the fraudulent revival of the LAW lien.  We also hold that Knudson's due process claim and improper review claim are without merit.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.