# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1450

_____

Greg Shelton, Shelton Wholesale, Inc.,    *
National Fireworks Association, Inc.,      *
                                           *
        Plaintiffs-Appellants,             *
                                           *
    v.                                     *
                                           *
Consumer Products Safety Commission;*
United States; Ann Brown, Chairman,        *
U.S. Consumer Product Safety               *
Commission; Eric B. Ault, Director,        *
Central Regional Center, U.S. Consumer*
Product Safety Division,                   *
                                           *
        Defendants-Appellees.              *
                                           *

_____

No. 01-1599

_____

United States of America,                 *
                                           *
        Plaintiff-Appellee,                *
                                           *
    v.                                     *
                                           *
Shelton Wholesale, Inc., a Missouri        *
corporation, doing business as             *
Shelton Fireworks, Inc., doing             *
business as Polaris Fireworks;             *

Appeals from the United States
District Court for the
Western District of Missouri

Polaris Fireworks, Inc., a Missouri      *
corporation; Gregory P. Shelton,        *
                                         *
         Defendants-Appellants.      *
_____

Submitted:    September 10, 2001

Filed:    January 23, 2002
_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Shelton Wholesale, Inc., and Polaris Fireworks, Inc., (together, the "corporate parties") are Missouri businesses that import and distribute fireworks from Hong Kong, and Gregory Shelton is president and owner of both corporate parties. Gregory Shelton and the corporate parties (collectively, "the Shelton parties") appeal from two final orders granting summary judgment, a final bench verdict, and a bench ruling in favor of the United States and the Consumer Product Safety Commission ("CPSC") (together, the "Government"), entered in the United States District Court for the Western District of Missouri[1] in two related cases. United States v. Shelton Wholesale, Inc., No. 96-6131-CV-SJ-6 (W.D. Mo. filed Oct. 2, 1996) ("the Fine Case"); Shelton v. Consumer Products Safety Comm'n., No. 97-6021-CV-SJ-6) (W.D. Mo. filed Feb. 14, 1997) ("the NFA Case"). For reversal in both cases, the Shelton parties argue that the district court (1) erred in holding that the CPSC did not exceed its jurisdiction because the Federal Hazardous Substances Act ("FHSA") does not extend to common fireworks, (2) erred in holding that the CPSC did not violate the

_____

[1] The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

-2-

Shelton parties' due process rights by destroying the Shelton parties' fireworks without providing an opportunity for a full administrative hearing, (3) abused its discretion in admitting into evidence laboratory test reports offered by the Government under the business exception to the hearsay rule, and (4) abused its discretion in denying a jury trial to the corporate parties. For the reasons discussed below, we affirm the orders of the district court.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Factual and Procedural Background

In the Fine Case, the United States sought civil penalties and injunctive relief against the Shelton parties for violations of the FHSA, 15 U.S.C. § 1261 et seq. Between 1992 and 1996, the Shelton parties imported fireworks from Hong Kong that the Government contended were defective under fireworks regulations enacted pursuant to the FHSA and enforced by the CPSC. The United States originally filed suit in the Fine Case against the corporate parties – but not Gregory Shelton – on October 2, 1996, and filed an amended complaint on November 7, 1996.[2] On February 20, 1997, the United States moved to amend its complaint to add Gregory Shelton. On May 20, 1997, the district court granted the United States' motion; on the same day, the United States filed its second amended complaint adding Gregory Shelton. On June 11, 1997, all three defendants comprising the Shelton parties answered the second amended complaint and, for the first time, demanded a jury trial.

---

[2] The United States amended its complaint to reduce the list of Shelton's products it contended were defective from twenty-two products to nineteen products, and to add more specific information about which of the regulations the other products violated.

On February 14, 1997, the Shelton parties and a nonprofit trade association, National Fireworks Association, Ltd. ("NFA"), filed suit in the NFA Case against the CPSC seeking a declaratory judgment that the CPSC (1) had no jurisdiction over common fireworks, (2) had denied the Shelton parties' due process rights, and (3) had improperly tested the fireworks.

On April 28, 1998, after noting that the parties incorporated into their briefs in the Fine Case many of the same arguments raised in the NFA Case, the district court ruled on summary judgment in both cases that the FHSA extends to common fireworks and that the Shelton parties' due process rights had not been violated. See United States v. Shelton Wholesale, Inc., No. 96-6131-CV-SJ-6/97-6021-CV-SJ-4-6, 1998 WL 251273, at *1, 3 n.7 (W.D. Mo. Apr. 28, 1998) (Shelton I) (granting partial summary judgment in Fine Case and NFA Case, reserving questions of fact for trial). The district court noted that the uncontroverted evidence showed that the CPSC had selected nineteen samples representing various fireworks products for testing from twelve shipments imported by the Shelton parties from Hong Kong to a United States Customs Port. See id. at *1. All of the fireworks products were common fireworks (e.g. toy paper caps, cone fountains, cylinder fountains, whistles without report, and sparklers), and were intended only to be used outdoors. See id. at *4. The CPSC transported the samples to its laboratory to conduct performance tests to determine whether the fireworks products were safe for consumers based on the standards outlined in the fireworks regulations. See id. at *2. When the samples of all of the nineteen fireworks products failed at least one (and in some cases more than one) of the performance tests conducted, the CPSC determined that each of the fireworks products was a banned hazardous substance under the FHSA. See id. at *3, 4.

On May 1, 1998, the district court ruled that the corporate parties were not entitled to a jury trial because the corporate parties did not make a timely demand for a jury trial, but that a separate jury trial for Gregory Shelton, who had timely invoked his right to a jury, was appropriate. See United States v. Shelton Wholesale, Inc., No.

96-6131-CV-SJ-6/97-6021-CV-SJ-4-6 (May 1, 1998 (order denying jury trial to corporate parties)).

At the bench trial, the Government called CPSC Director of Laboratory Sciences Warren Porter to introduce the laboratory test results for each of the nineteen products. Porter testified on direct examination that the CPSC always uses the following procedures when it tests fireworks: First, each fireworks performance test is conducted by a chemist and a technician, who contemporaneously record the test results on a standard form. Next, the secretary enters the test results recorded on the form into a database and prints out a report. The report is checked for accuracy by the same chemist and technician who performed the test, then the report is brought to Porter, who conducts a final review for accuracy. The district court admitted the test reports into evidence under the business records exception over the Shelton parties' objection that the laboratory reports were not produced in the regular course of business because Porter did not personally conduct all of the testing and less experienced analysts helped with the testing on occasion. The Shelton parties' expert witness, Dr. Roger L. Schneider, testified that the CPSC test methods were imprecise in his opinion because human error was not considered to the extent he deemed sufficient. See Shelton I, 1998 WL 251273, at *10.

The evidence further showed that each time the CPSC determined that one of the Shelton parties' fireworks products violated the fireworks regulations, the CPSC informed the Shelton parties by sending a letter of advice ("LOA"), itemizing the violations and explaining the procedures for submitting contrary evidence or views. See id. at *3-4. With respect to the first seven products, the CPSC sent LOAs to Polaris Fireworks, Inc., addressed to Gregory Shelton, that stated "[i]f you disagree with our decision regarding these . . . banned fireworks devices, you may submit your views as to why you disagree with our conclusion. You should submit any information that you wish to offer into evidence within 10 days of your receipt of this letter."

For products eight through nineteen, the LOAs were accompanied by a copy of the CPSC's Regulated Products Handbook and referred to the relevant chapter therein describing what importers and distributors should do if they disagreed with the CPSC's conclusions. Chapter Two of the Regulated Products Handbook explains:

> In response to the LOA, you may submit to the [CPSC] staff evidence and arguments that the product is not violative, not covered by a specific regulation, or should not be refused admission into the U.S. . . . Such evidence may consist of:
>
> • results of tests indicating the product complies with the applicable regulation;
>
> • marketing data indicating the product is not intended for the population group protected by the regulation;
>
> • any other type of information.

Each LOA specified the individual to whom any responses should be directed, and included that individual's address and telephone number. In total, the Shelton parties submitted one letter challenging the CPSC's finding with respect to two of the nineteen products for which they received LOAs. See Shelton I, 1998 WL 251273, at *9.

On January 6, 1999, at the conclusion of the bench trial, the district court issued a joint memorandum and order, ruling in both cases that the fireworks products in question were banned hazardous substances under the FHSA and that the Shelton parties' due process rights had not been violated. See United States v. Shelton, 34 F. Supp. 2d 1147, 1167 (W.D. Mo. 1999) (entering judgment in favor of Government and against corporate parties; rejecting corporate parties' renewed due process claims and attacks on precision of CPSC testing methods) (Shelton II).

In the Fine Case, the district court assessed a $100,000 fine against Shelton Wholesale, Inc., for knowingly importing as many as ten of the nineteen products at issue in violation of the FHSA. See id. at 1166-67. The district court reasoned that Shelton Wholesale, Inc., had failed to exercise due care when it imported those fireworks, because Gregory Shelton was on notice that the fireworks he imported through Polaris Fireworks, Inc., were hazardous after receiving the first group of LOAs. See id. at 1163. The district court also enjoined the corporate parties from knowingly or recklessly importing products in the future that violate the FHSA. See id. at 1166-67.

On September 21, 1999, the district court held that there were no material facts in dispute and granted summary judgment in favor of the Government against Gregory Shelton based on its earlier ruling that the Shelton parties had violated the FHSA. See United States v. Shelton Wholesale, Inc., No. 96-6131-CV-SJ-6, 1999 WL 825483, at *1 (W.D. Mo. Sept. 21, 1999) (Shelton III) (granting summary judgment against Gregory Shelton because no genuine issue remained as to whether Shelton parties violated FHSA; noting no additional legal or factual defenses, and no challenges to previous summary judgment motions or evidence presented at corporate parties' trial). The district court also enjoined Gregory Shelton from knowingly or recklessly importing products in violation of the FHSA. See id. The Shelton parties timely filed notices of appeal in the Fine Case and the NFA Case pursuant to Fed. R. App. P. 4(a). This Court consolidated the Fine Case and the NFA Case for purposes of appeal on April 2, 2001.

## II. Interpretation of the FHSA

The Shelton parties argue that the district court erred in holding that the FHSA confers to the CPSC jurisdiction over adequately labeled common fireworks. The Shelton parties and the NFA argue that common fireworks are exempted from the reach of the CPSC.

Because this question requires the legal interpretation of a statute, we review this issue *de novo*.  See Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 936 (8th Cir. 2000) (Ragsdale); Boles Trucking, Inc. v. United States, 77 F.3d 236, 242 n.3 (8th Cir. 1996).  When interpreting a statute, this Court first analyzes whether congressional intent is clear from the plain meaning of the statute. See Chevron U.S.A. v. Natural Res. Def. Couns., 467 U.S. 837, 842 (1984) (Chevron); Ragsdale, 218 F.3d at 936.  If the intent is clear, that is the end of the inquiry.  See Chevron, 467 U.S. at 842-43.  If congressional intent is not clear, this Court defers to the agency construction of the statute, provided that the construction is reasonable.  See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000) (holding that federal agency charged with administering statute is accorded deference in interpreting statute "because of the agency's greater familiarity with the ever-changing facts and circumstances surrounding the subjects regulated"); Chevron, 467 U.S. at 843; Ragsdale, 218 F.3d at 936.  "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n.11; see also Wittler v. Chater, 59 F.3d 95, 97 (8th Cir. 1995) (affirming agency's interpretation of statute because it reflected "a plausible construction of the plain language of the

statute").[3] We hold that the district court correctly determined that the FHSA applies to common fireworks based on the plain meaning of the statute.

The FHSA provides in pertinent part that:

[t]he term "banned hazardous substance" means (A) any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted; or (B) any hazardous substance intended, or packaged in a form suitable, for use in the household, which the [CPSC] by regulation classifies as a "banned hazardous substance" on the basis of a finding that, notwithstanding such cautionary labeling as is or may be required under this Act for that substance, the degree or nature of the hazard involved in the presence or use of such substance in households is such that the objective of the protection of the public health and safety can be adequately served only by keeping such substance, when so intended or packaged, out of the channels of interstate commerce: *Provided, That the [CPSC], by regulation . . . (ii) shall exempt from clause (A), and provide for the labeling of, common fireworks . . . to the extent that [it] determines that such articles can be adequately labeled to protect the purchasers and users thereof.*

---

[3]Gregory Shelton argues that the CPSC construction is not entitled to deference because the FHSA is also a criminal statute and, therefore, is subject to the rule of lenity. See United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 518 n.10 (1992) (plurality). However, the rule of lenity is applied only where there still exists an ambiguity after the reviewing court applies traditional methods of statutory construction. See id. at 517-18; United States v. Galloway, 976 F.2d 414, 421 n.5 (8th Cir. 1992) (declining to invoke rule of lenity because no ambiguity in statute); see also Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 704 n.18 (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement."). Here, the rule of lenity has no application because there is no ambiguity with respect to the relevant provisions in the FHSA.

15 U.S.C. § 1261(q)(1) (emphasis added). The Shelton parties argue erroneously that Clause B does not apply because Clause A, which bans toys containing hazardous substances, completely exempts adequately labeled common fireworks from classification as banned hazardous substances. However, it is clear from the plain language of the statute that Congress intended Clause A and Clause B to serve two different purposes. Clause A, on its face and through subsection (ii) of the proviso, expressly bans hazardous products that are intended solely for use by children unless those products can be adequately labeled. Therefore, any hazardous products that are not intended solely for use by children, and products that are adequately labeled, are not governed by Clause A. That does not mean that such hazardous products are immune from the jurisdiction of the CPSC – only that they cannot be banned pursuant to that particular clause. Clause B serves the more general purpose of banning hazardous substances regardless of whether they are intended for children or adults, and "notwithstanding . . . cautionary labeling." 15 U.S.C. § 1261(q)(1)(B). The clauses do not conflict with one another, as the Shelton parties seem to suggest; rather, the clauses complement one another.

Clause B does not provide a list of banned products. Instead, the clause requires the CPSC to develop rules governing the banning of hazardous substances, which the CPSC did in developing the fireworks regulations. Accord Chevron, 467 U.S. at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."). The fireworks regulations were promulgated to fill the gap in Clause B – not Clause A – in order to determine which products cannot be made safe even with cautionary labeling. As the fireworks regulations explain,

[u]nder the authority of section 2(q)(1)(B) of the [FHSA], the [CPSC] declares as banned hazardous substances the following articles because they possess such a degree or nature of hazard that adequate cautionary labeling cannot be written and the public health and safety can be served only by keeping such articles out of interstate commerce: . . . (9) All fireworks devices, other than firecrackers, including kits and components intended to produce such fireworks, not otherwise banned under the act, that do not comply with the applicable requirements of part 1507 of this chapter. . .

16 C.F.R. § 1500.17(a). The CPSC has specifically determined that products that fail the performance standards outlined in its regulations must be banned. See 16 C.F.R. § 1507.1 ("This part 1507 prescribes requirements for those fireworks devices … not otherwise banned under the [FHSA]. Any fireworks device … which fails to conform to applicable requirements is a banned hazardous substance and is prohibited from the channels of interstate commerce. Any fireworks device not otherwise banned under the [FHSA] shall not be a banned hazardous substance by virtue of the fact that there are no applicable requirements prescribed herein."). Thus, neither the FHSA nor the fireworks regulations completely ban common fireworks; they ban only common fireworks that violate certain performance standards, as the Shelton parties' fireworks did in this case.

When all of the Shelton parties' nineteen tested products failed the minimum performance standards set forth by the regulations, the CPSC determined that the fireworks in question could not be made safe for use in the household by the general public regardless of whether the products had cautionary labeling. These are the types of circumstances for which Clause B – not Clause A – was intended. The plain reading of the statute leaves no other plausible interpretation.[4] Hence, we conclude

---

[4]The Shelton parties also suggest that Clause B could not possibly pertain to common fireworks because (1) common fireworks are toys, which are subject only to Clause A and exempted by that clause, and (2) their fireworks are intended for

outdoor use, and therefore not intended to be used "in households." Both arguments fail. With respect to the first argument, we adopt the reasoning of the Third Circuit:

> This court previously has noted the likely combination of children and fireworks. See Suchomajcz v. Hummel Chem. Co., 524 F.2d 19, 26 (3d Cir. 1975). Furthermore, the statute itself treats fireworks as toys. See 15 U.S.C. § 1261(q)(1) (1982) (exempting from the § 1261(q)(1)(A) ban any common fireworks to the extent the Secretary deems adequate labels can be devised). *It should be noted, however, that the Secretary promulgated the bans on fireworks pursuant to 15 U.S.C. § 1261(q)(1)(B), not pursuant to (q)(1)(A). See 16 C.F.R. § 1500.17(a) (1988). Therefore, they ban fireworks that have been deemed a threat to society at large. Id. Any focus upon children is misplaced.*

United States v. Focht, 882 F.2d 55, 61 n.15 (3d Cir. 1989) (emphasis added). Similarly, the CPSC determined in the present case that the Shelton parties' products were dangerous enough to constitute a threat to the general population, not just to children, and accordingly proceeded under Clause B.

The Shelton parties' next argument, suggesting that Clause B's reference to households means that it applies only to products used indoors and not outdoors, is also without merit because the FHSA makes no such distinction. Indeed, 16 C.F.R. § 1500.3(c)(10)(i), qualifying the language in the FHSA, precisely refutes this contention. Specifically, § 1500.3(c)(10)(i) provides:

> [h]azardous substances intended, or packaged in a form suitable, for use in the household means any hazardous substance, whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed. . . . Size of unit or container is not the only index of whether the article is suitable for use in or around the household; the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling.

-12-

that the district court did not err in holding that the Shelton parties' fireworks were subject to Clause B of the FHSA and to the jurisdiction of the CPSC.

## III. Due Process Claim

The Shelton parties next argue that the district court erred in ruling that their due process rights were not violated. The Shelton parties and the NFA accordingly request that this Court reverse the district court's ruling in the Fine Case that the Shelton parties violated the FHSA. We review the Shelton parties' claim that they were denied due process *de novo* because it is a constitutional claim, requiring legal interpretation. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479 (1991).

The Shelton parties argue that the CPSC should have provided a full administrative hearing before destroying the fireworks it determined were banned hazardous substances. As an initial matter, the Supreme Court has held that due process does not always require a full administrative hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) (holding that due process requirements vary, that generally something less than full evidentiary hearing is sufficient, and that essential requirements of due process are notice and opportunity for response); United States v. Florida East Coast Ry. Corp., 410 U.S. 224, 241 (1973) (holding that "hearing" under the Administrative Procedure Act requires that parties have fair notice of what agency intends to do and that parties have opportunity to comment; but "hearing" does not require oral testimony, cross-examination, or oral argument). The Shelton parties concede that the FHSA itself does not specify that the hearing must be a full administrative hearing.[5]

---

[5]The relevant portion of the FHSA, 15 U.S.C. § 1273(a), provides:

Delivery of samples to [CPSC]; examination; refusal of admission. The

-13-

The Shelton parties argue that they were entitled to a full administrative hearing because the Consumer Product Safety Act, 15 U.S.C. § 2066, ("CPSA"), a statute that is also administered by the CPSC, requires a full administrative hearing before an administrative law judge before a product is refused admission into the United States. However, the CPSA is a separate statute that has no application in this case. The United States brought this action against the Shelton parties pursuant to the

---

Secretary of the Treasury shall deliver to the [CPSC], upon [its] request, samples of hazardous substances which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the [CPSC] and have the right to introduce testimony. If it appears from the examination of such samples or otherwise that such hazardous substance is a misbranded hazardous substance or banned hazardous substance or in violation of section 4(f) [15 U.S.C.S. § 1263(f)], then such hazardous substance shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such hazardous substance refused admission unless such hazardous substance is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of the date of notice of such refusal or within such additional time as may be permitted pursuant to such regulations.

FHSA and the fireworks regulations promulgated pursuant to the FHSA.[6]  Thus, the Shelton parties' arguments with respect to the CPSA are irrelevant.[7]

Citing 16 C.F.R. § 1500.268, the Shelton parties argue that the regulations promulgated pursuant to the FHSA also require a full administrative hearing.  In so arguing, the Shelton parties misconstrue the plain language of 16 C.F.R. § 1500.268 (titled "hearing," and defining "hearing" in context of FHSA).

---

[6] Pursuant to 15 U.S.C. § 2079(d), the CPSC can only regulate a product that is subject to the FHSA under the CPSA if it makes a specific finding that it is in the public interest to do so, which the CPSC did not do in this case.  15 U.S.C. § 2079(d) provides:

> [r]egulation by Commission of consumer products in accordance with other provisions of law. A risk of injury which is associated with a consumer product and which could be eliminated or reduced to a sufficient extent by action under the Federal Hazardous Substances Act . . . may be regulated under this Act only if the Commission by rule finds that it is in the public interest to regulate such risk of injury under this Act. …

[7] The Shelton parties argue further that the CPSC specifically applied the CPSA to the importation of fireworks in this case, referring to the following language in some of the LOAs: "Sections 15 and 37 of the CPSA contain requirements for reporting to the Commission information on certain products which you manufacture, import, or distribute."  However, while importers and distributors are obligated under the CPSA to report potentially hazardous products, that requirement is separate from the provisions in the FHSA, under which the Government proceeded in this action. See Ex. 12 (Regulated Products Handbook, Ch. 5, at 10-11) ("This chapter contains information to familiarize companies with their reporting obligations under the Consumer Product Safety Act (CPSA). Companies that distribute consumer products subject to the Federal Hazardous Substances Safety Act (FHSA) . . . also must comply with these reporting requirements.").

Subsection (a) of 16 C.F.R. § 1500.268 requires, first, that "[i]f it appears that the hazardous substance may be subject to refusal of admission, the area office director shall give the owner or consignee a written notice to that effect, stating the reasons therefor." It is undisputed that the products appeared to the CPSC to be subject to refusal of admission because all of the products failed the tests the CPSC conducted. It is further undisputed that written LOAs to that effect were sent to the Shelton parties, and that the LOAs identified the specific performance standards that the products failed.

The regulation next requires that "[t]he notice shall specify a place and a period of time during which the owner or consignee shall have an opportunity to introduce testimony." Id. In this case, the LOAs explained that the Shelton parties should introduce any evidence to the CPSC staff, provided the address, and stipulated that the time period was within ten days from receipt of the LOA.

The regulation continues: "[u]pon timely request, giving reasonable grounds therefor, such time and place may be changed." Id. The Shelton parties argue that, because the fireworks were being held by the United States Customs Department ("U.S. Customs"), the Shelton parties could not conduct their own testing, and that it is insufficient for the Government to argue that the Shelton parties could have requested an extension of time to respond to the LOAs or obtained approval from U.S. Customs to sample the products. However, 16 C.F.R. § 1500.268(a) speaks explicitly to the contrary. See also Shelton II, 34 F. Supp. 2d at 1152 (pointing to uncontroverted testimony that CPSC granted only request to take samples from shipment held under customs bond, and, that 19 C.F.R. § 19.8 permits examination and sampling of goods held in bonded warehouse). At no point did the Shelton parties attempt to take advantage of the provision that allowed them to request that either the time or place be changed.

Finally, the regulation provides that "[s]uch testimony shall be confined to matters relevant to the admissibility of the hazardous substance, and may be introduced orally or in writing." 16 C.F.R. § 1500.268(a). The Shelton parties actually did respond to one of the LOAs by submitting written evidence to rebut the conclusion of the CPSC – albeit with respect to only one product out of the nineteen products for which LOAs were received – evincing that Gregory Shelton had notice of his opportunity to submit evidence. Accordingly, the district court properly held that the CPSC had not violated the Shelton parties' due process rights.

IV. Admissibility into Evidence of Laboratory Reports

The Shelton parties argue that the district court erred in admitting the CPSC laboratory test reports into evidence under the business records exception, and that the laboratory reports were the only evidence offered to prove that the nineteen fireworks were banned hazardous substances.[8]

We review a trial court's evidentiary rulings under the abuse of discretion standard, see General Elec. Co. v. Joiner, 522 U.S. 136 (1997), affording the district court substantial deference. See Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 954 (8th Cir. 2000). For the reasons discussed below, we hold that the district court did not abuse its discretion in admitting the laboratory reports into evidence as business records.

---

[8]The Shelton parties also argue that the reports were improperly admitted expert testimony because the CPSC did not establish that the testers had the skill, experience, training, or specialized knowledge required by Fed. R. Evid. 702. We do not reach this argument because we hold that the district court did not abuse its discretion by admitting the laboratory reports into evidence under Fed. R. Evid. 803(6).

Fed. R. Evid 803(6) permits admission into evidence of "records of regularly conducted activity."[9]  The Shelton parties argue that the Government failed to meet its burden of proving that the CPSC employees who conducted the testing did so in the regular course of business.  We disagree.

As an initial matter, laboratory test reports constitute business records and therefore are admissible subject to the requirements of Fed. R. Evid. 803(6).  See United States v. Baker, 855 F.2d 1353, 1359-60 (8th Cir. 1988) (affirming district court holding that regularly conducted laboratory reports were admissible as business records under Fed. R. Evid 803(6)).  It is undisputed that the CPSC tests fireworks in the course of its regularly conducted activity.  See Tr. of proceeding, May 11, 1998 (Trial Test. of Warren K. Porter, Jr.); see also United States v. Midwest Fireworks Mfg. Co., 248 F.3d 563 (6th Cir. 2001) (finding that CPSC conducts at least 4,000-5,000 tests on fireworks per year).  It is further undisputed that every time the CPSC

---

[9] The business records exception provides that the hearsay rule does not exclude from evidence:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6).

tests fireworks, the data is recorded in the same way, reviewed for accuracy in the same way, and stored in the same way. See Tr. of proceeding, May 11, 1998 (Trial Test. of Warren K. Porter, Jr.). Therefore, the Government met its initial burden of showing that the laboratory test reports in question fell within the business records exception.

The business records exception applies, and the records are deemed admissible, unless problems of untrustworthiness appear. See Fed. R. Evid. 803(6) (providing that records made in course of regularly conducted business will be taken as admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness"); c.f. Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613 (8th Cir. 1983) (Kehm) (interpreting test for admissibility of public records pursuant to Fed. R. Evid. 803(8)). The language of Fed. R. Evid. 803(6) parallels the principles we articulated in Kehm, where we held that the public records exception assumes admissibility in the first instance and provides that the party opposing admission has the burden of proving inadmissibility. We therefore apply the same principles to admission of business records that we articulated for admission of public records in Kehm, and hold that once the offering party has met its burden of establishing the foundational requirements of the business records exception, the burden shifts to the party opposing admission to prove inadmissibility by establishing sufficient indicia of untrustworthiness. See id. at 618; see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 450 (2d ed. 1994) (arguing that party objecting to admission of business record bears burden of raising trustworthiness issue and showing that record is untrustworthy).

The Shelton parties failed to challenge the trustworthiness of the information contained in the laboratory reports, or to suggest that the information was recorded inaccurately or that the CPSC does not test fireworks regularly. Although the Shelton parties argue that some of the laboratory technicians who tested the Shelton parties' fireworks had less experience than others, this contention is irrelevant to the question

of whether the records were kept in the regular course of business at the CPSC. The testimony of the Shelton parties' expert, Dr. Schnieder, opining that the tests themselves did not actually prove that the fireworks were hazardous, goes to the weight of the reports, not their admissibility. See Firemen's Fund Ins. Co. v. Thien, 63 F.3d 754, 757-58 (8th Cir. 1995) (finding no abuse of discretion when district court admitted documents into evidence under business records exception because arguments to contrary went to credibility of witnesses, not admissibility of evidence, and thus were more appropriate for cross-examination than evidentiary objection); Kehm, 724 F.2d at 624 (distinguishing weight of evidence from admissibility of evidence).

## V. Denial of Jury Trial

The corporate parties argue that the district court abused its discretion in denying their demand for a jury trial. The corporate parties ask that this Court reverse and remand to the district court for a new trial by jury. A district court's denial of a jury trial is reviewed for an abuse of discretion. See Spear v. Dayton's, 771 F.2d 1140, 1144 (8th Cir. 1985).

The corporate parties argue that they demanded a jury trial within ten days from the service of the "last pleading directed to such issue," which they argue fulfills the requirements of Fed. R. Civ. P. 38(b). The corporate parties contend that "the 'last pleading' directed to the issues in this case was the Answer to Plaintiff's Second Amended Complaint in which the Shelton Corporations rightfully demanded their jury trial." Brief for Appellants at 33. However, the United States' second amended complaint presented no new issues triable of right to a jury as to the corporate parties. The only thing new about the second amended complaint was that Gregory Shelton was added to the complaint in his individual capacity. Thus, Gregory Shelton had the right to a jury arising out of the second amended complaint, but the other parties to the action did not. See First Wisconsin Nat'l Bank v. Klapmeier, 526 F.2d 77, 79-80

-20-

(8th Cir. 1975) (holding that defendant already waived jury trial on issues raised in original complaint, but could get jury trial solely on new issue raised in amended answer). The corporate parties had already waived their right to a jury trial by not demanding a jury trial within the required time period after the first amended complaint. Because the second amended complaint contained no new triable issues that pertained to them, the right to a jury trial under Rule 38 was not revived. See Fed. R. Civ. P. 38(d) ("The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury…."); see also In re Yukon Energy Corp., 138 F.3d 1254, 1260 (8th Cir. 1998) (affirming district court ruling that defendant waived right to jury trial because, "[e]ven if [defendant] requested a jury trial within ten days of [plaintiff's] final amended complaint, the essence of [plaintiff's] allegation against [defendant] was not changed by this amendment and remained unchanged throughout the course of the litigation").

Upon motion, a district court has the discretion under Fed. R. Civ. P. 39(b) to order a jury trial "notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made out of right…" Here, the corporate parties offered no justification for their failure to timely demand a jury trial. See Littlefield v. Fort Dodge Messenger, 614 F.2d 581, 585 (8th Cir. 1980) (affirming denial of relief from waiver of jury trial when party offered "no justification for the failure to make an appropriate demand" for jury trial). The corporate parties' argument that the district court should have excused their waiver because it was the opposing party, and not them, that filed the amended pleadings is unpersuasive and not supported by the law. See, e.g., Continental Bank & Trust Co. v. American Bonding Co., 605 F.2d 1049, 1055 n.13 (8th Cir. 1979) (holding that defendant could not revive waived right to jury trial because opposing party's amended complaint did not add new issues triable by jury). We hold that the district court did not abuse its discretion in denying the corporate parties a jury trial.

## VI. Conclusion

We hold that the FHSA extends to common fireworks and confers jurisdiction to the CPSC, that the Shelton parties' due process rights had not been violated because they had notice and opportunity for response, that the laboratory test reports were properly admitted into evidence under the business exception to the hearsay rule, and that the corporate parties waived their right to a jury trial because they did not file a timely demand. Accordingly, we affirm the orders of the district court in Shelton I and Shelton II.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.